May it please the court, Christina Gabrielides on behalf of Mrs. Joann Wiggan. I'd like to reserve five minutes for rebuttal time. In a prosecution for perjury before the grand jury, it is unheard of for the government to call a grand jury to testify as to his subjective impressions of a defendant. A trial strategy is not improper merely because it's unique, but when a strategy such as this has never been used, there's generally a good reason. This court should have great difficulty understanding why a class of testimony that's unprecedented in any circuit in the country should have been used here in a relatively straightforward perjury prosecution. So what was the specific problem that the grand jury chairman was asked? What is your subjective view of how the grand jury viewed her? If they hadn't asked that subjective question about what your conclusion was, whether she was a truth teller or not, but it only asked what did she said, what did she do, and left it at an objective testimony, would you not have any problems with that? If the grand juror foreman was permitted to solely testify as to his as a percipient witness as to objective criteria in the courtroom, such as, you know, the conditions of the room, how many people were there, whether she was sweating. No, no, we wouldn't care about that. He could have been asked and answered what she said, but he's not allowed, in your view, to answer whether they found her credible or not. Correct. So it's the subjective essence that is the core of your argument. Exactly. And why isn't the subjective, if you're trying to, the question is whether she was being truthful, why isn't a subjective evaluation also relevant in going to the race gesti of what she said and how she said it? Well, considering the source of this information, the grand juror who's coming to testify. You've already said is okay. It's okay in a very, very limited context. And the cases have established, and we conceded and defense counsel conceded, materiality is typically the only subject area where a grand juror is invited and allowed to come and testify before the petty jury. There's no precedent for what happened here. And it is prohibited by the rules, three different rules of evidence, 403, 606B, and 701. The subjective beliefs. But at least some of those we review under a very deferential standard. 403 particularly is a very deferential standard. However, however, that subjective, that deferential standard only applies if the district court had made a conscientious decision balancing the probative value of the evidence versus the potential for unfair prejudice, which didn't occur in this case. What happened here in the preliminary, the in limb motion hearing, defense counsel said, whoa, whoa, whoa, we do not want to have a grand juror come and testify. We will stipulate as to materiality. This didn't even need to be an issue before the court. It shouldn't have happened at all. However, what did occur was the government came forward and said, it is okay. We have case law backing our ability to bring this grand juror forward to testify as to materiality. He will testify as to materiality. He is not going to testify as to the mental state that Mrs. Wiggin has. He's not going to testify in an expert capacity about her mental state. And he's not going to tell the petty jury how to decide the case. Well, that was the proffer on the government side. And the district court said, sounds good to me, and went forward with trial. But at trial, what happened was completely different from what was proffered in the in limb hearing. And what happened at trial was the grand juror went well beyond this very, very confined area of testimony. And he testified that Mrs. Wiggin was not credible. She had repeatedly lied. This is his conclusion. This is his assumption that he was a victim of her crimes, that the entire grand jury was a victim of her crimes. And he was just here convicted. If he hadn't been foreman of the grand jury but was a fact witness of some other conversation outside the jury context totally, and he was called to say what Mrs. Wiggin said on just a totally street conversation, could he have been asked, did you believe what that witness told you in that street conversation? Could you have made a credibility determination? I believe so. There's something unique about restrictions on what a grand juror can testify about that tightens it more. It seems to me the answer to that question would have to depend on context, and it would have to depend on context here. I mean, if it mattered, I mean, he could testify to what he believed if what he believed was somewhat relevant to what he did next, for example, and then there's for a non-grand juror. But just in general, do you ask, do you ever ask a juror, did you believe that, if it's not relevant to the factual context in some way? No. I mean, this is, this is. You just answered Judge Ebell, yes, so. Okay. Sorry. Let me, let me, let me try to clarify this. It is, it is context specific when you can ask a witness about the credibility of the defendant who's on trial. For example, there is a case where two police officers who had investigated a case about the defendant came in and testified that they didn't believe the defendant was credible. Well, that's not permissible because what are you basing your opinion on? How are you able to come in and say this person's not credible just because you were part of an investigation? That's, that's not appropriate. What the court needs to be able to understand, and the jury eventually, is what criteria is the witness basing their opinion on? And you, that's a foundation question. If I were, if we were prosecuting a Ponzi scheme outside the court system and you were asking a victim, so what did this defendant tell you to convince you to pay money? And so the victim was on the stand as a witness saying, well, he told me that I could make tons of money. Okay. The question is, did you believe him or didn't you? Was he, in your opinion at the time, credible or not? Do you think you could probe into whether that victim had a subjective determination of whether the story told him was truthful or not? If a proper foundation was laid under 701, yes, I think that you could. Okay. So then it comes to a foundation question. Correct. But we still are dealing with this deferential standard. No. I don't think it applies in this case. Okay. Why? Because the court did not consider, at trial the court was considering really rule 701. That is apparently what the court was doing because she was allowing testimony based on, is this your opinion? Is this your opinion? That was the question that she kept asking. If it's your own opinion, you can testify about it. That's a question under Rule 701. But under Rule 403, the questions are different. What is the point of that? But I thought under Rule 701, the question is whether it would be helpful to the jury. And helpful to the jury. Which it would be in the hypothetical that you gave or the hypothetical that Judge Bell gave because the question of whether reliance is an element to the crime. But in this instance, what exactly is the relevance of what or the helpfulness of what the grand jury foreman believed? It's not helpful. And it should have been excluded on that basis. There are three reasons. Under 701, the opinion wasn't helpful because the jury already had all of the information that it needed to make its determination without this testimony. And what about his testimony where he said things like she was belligerent, she was ‑‑ he said, before he said we didn't find him credible or aside from saying that, he said a bunch of things that seems to me are somewhere in the middle. I mean, they were characterizing what she said. So they weren't strictly precipient witness things. I mean, he didn't say she said X. He said she was belligerent. Now, is that okay or not? No. That's a conclusion. It's a conclusion about his impression, his subjective impression of this person based on what? And defense counsel, specifically for belligerence, defense counsel said Mrs. Wiggins is from New York. And, you know, she's a ‑‑ she's a 56-year-old woman. She's a tough, tough lady from New York. And she has kind of a gruff attitude, but that's the kind of personality she has. That's the kind of character that she has. And it's quite possible that this grand jury foreman did not like her because of her personality characteristic, not because she's a liar, but just because of her personality that he perceived as belligerent. We don't know why he believed she was belligerent. So you would move the bar over to he could have said she said X, and he could have said she was sweating, and he could have said she was looking down or looking up or crying or something. Correct. But nothing that would ascribe, characterize, or get into her mind in any way. Into her mind or into his mind. And that's the fundamental problem here because the grand jury foreman is a member of the grand jury. And the problem there is under 606B, the grand jury is not supposed to come and testify about what they believe. The trouble with 606B is that it's prefaced by language about where the verdict or indictment is at issue. So maybe it doesn't apply here. Well, I believe that it does. And in order to protect the integrity of the jury system, in order for, in cases like this in the future, if the prosecution says, you know, we're going to have a member of the grand jury come and testify, as defense counsel I'm going to say I want to subpoena the entire grand jury, I want to interview the entire grand jury, and I want to assess for myself what every single person believes because there might be dissension about what their impressions were of the defendant and I want to see who was going to be the best in this case. There's still a limitation in the language of the rule. How does it apply here? I'm sorry? There is still a limitation in the language of the rule. So how does it apply here? A limitation as far as? Where the validity of the indictment is at issue. Okay. Well, it's opening the door into a question of the validity of the indictment. And no one was attacking the indictment. Well, it also pertains to, you're right, the mental processes of the grand jury. So, you know, we really don't want to go in and start examining what the entire grand jury was thinking, and it could be a way Was that his question? Was he asked how did the whole grand jury evaluate her or was he asked how did you evaluate her? Well, he was asked how he evaluated her, but he answered for both. He said, I did not believe that she was credible and none of the other grand jurors believed that she was credible. Okay. So what if we were to agree with you as to the impropriety of the second but not as to the first? Where would that get you? Well, I think the result is going to be the same because I think that that is completely impermissible. You can't have someone speak for an entire grand jury. You know, that violates the So you could live with, you would prefer a broader ruling, but you think it would be sufficient for you to simply say that a question about what the whole grand jury felt was improper. I think that there are a myriad number of statements Would that be sufficient for you? Would that give you the relief you want if we were to agree with that narrow ruling? The ruling that I would want is that a grand juror cannot testify as to demeanor testimony, cannot testify as to the demeanor of a witness. Well, that's a different position than what you are taking. I mean, demeanor is, I mean, when I said could she testify that she was looking up or she was looking down or she was crying, you said he could. And that seems right. He probably could. Okay. So that's what I would call demeanor. So my understanding of what you're saying is he can't testify to something that is essentially an element of the crime when she's telling the truth, either on his behalf or on behalf of the whole jury. He can't testify as to what he thinks that she's thinking, and he can't testify as to what he's thinking. It's irrelevant. In fact, witnesses outside of a grand jury context, we allow witnesses all the time to extrapolate what we think the speaker was thinking if they can predicate that on a foundation, if there's a foundation objection, if they can predicate why they feel somebody was thinking this. They can't just say, I'm going to just subjectively say this. But you would have the follow-up question, well, why do you believe that? And then you will see if there's subjective reasons. But there is – I couldn't agree more that there is a sanctity about protecting the grand jury as an institution. I mean, I see a very big difference between what did the grand jury think and what did you think. But you really don't want us necessarily to draw that line, although I think you say that line would be sufficient for you in this case. I think that it would be sufficient, but it doesn't encompass the nature of the errors here. And I think that in order to protect the institutions – Well, but what's sufficient and isn't sufficient? And you only have a minute left, so I'm going to raise this question, but you may not want to answer it now. You may want to answer it later. Which is, doesn't – does the way we cut exactly what the problem is, assuming there's some problem here, affect the homelessness question and, therefore, whether she get a reversal or not? I think that it does. And the fact that – and correct me if I'm not addressing exactly your question. The fact that it's a grand juror, not just any other ordinary witness, it's very important because here the grand juror is basing his opinion about Mrs. Wiggin on evidence that was presented to him solely by the government in a proceeding where there was no judge, there's no defense counsel, there's no other evidence. So it's an extremely skewed proceeding. He's forming an opinion based on close collaboration with government prosecutors over years of time, and that's where his opinion is coming from. He did not testify as to the basis for why he thought that she was lying. He didn't connect any observation. There was no foundation laid as to why he believed that she was not credible. You know, the objective facts that one could observe. There was no basis that he provided for that. So the only thing that the petty jury was able to take away from this proceeding was, we don't know why he believes the way he does, but it's obvious that the grand jury foreman thinks this woman is a liar, who wants to see her convicted. We're a lot like the grand jury foreman. We're a jury the same as him. We should find exactly what he did. It's already been found. So our job's easy. Okay. Thank you very much. We'll give you a minute in rebuttal. Mr. Shire. Yes, Your Honor. May it please the Court, I'm Matt Shire for the United States. To assert her defense that her clearly, well, admittedly false testimony before the grand jury was not made willfully, the defendant took a stand and asserted the defense that essentially was a false depiction of what happened in the grand jury room. She relied on her claim that the grand jury session was, in her words, scary, that she was nervous, the prosecutor was intimidating, and the defense capitalized this in closing argument, portraying herself, portraying his client as meek and forgetful. The government had no way to rebut this. Did she testify in the first trial you're talking about now? In both trials. So she testified to this in the first trial, and in the first trial the government had no way to rebut this defense. The grand jury did not testify in that trial. Did she herself testify? She did. In the first and second trial? Yes. And the jury had a chance to see her in terms of her basic presentation? Yes. In trial, after she had been prepared by her counsel, prepared for trial, and put in front of the jury, but they did not, the jury, the petit jury did not know before what happened in the grand jury room. It was a closed grand jury session. So the government in the second trial proffered the testimony of the grand juror to describe the situation, to rebut what was a cornerstone of her defense. In fact, she called her husband to the stand both times to make this defense that she had simply forgotten. The defendant was described far from being meek and intimidated by the grand juror as being belligerent, very quick in response to questions, adamant in her testimony. He described her voice as being distinct, sharp, and straightforward. He said she did not appear confused, intimidated, or forgetful. She cut off questions of the prosecutor. She answered questions very quickly. Well, let's assume for the moment that all that was okay, although it seems, I mean, at least borderline. But he also said a bunch of things about whether he believed her, whether the grand jury believed her, whether he was glad she was wanted to be convicted, whether, and so on. Now, the credibility question is ultimately a merits question for the petty jury in the perjury trial. And why is he testifying to it? The credibility of the witness who takes the stand, the credibility during her testimony, is absolutely a subject for the trial jury. No. But in a perjury trial, the question is, was she telling the truth at the time that's being described? Correct. And the question, and this is counsel's argument, the cases that she cites in support of this claim, this also applies to closed-door testimony that the grand jury isn't peasant for, doesn't draw the distinction between the cases that hold that that type of testimony of credibility is not helpful. Why is it helpful? What's helpful about it? Helpful, and particularly what's helpful and not more prejudicial than helpful? The grand juror was able to explain to the jury that the defendant's claim that she was meek and intimidating was not true. I understand that. I'm putting that aside for now. I want to know why he said, what, five or six times that he didn't, he and at times he said the jury didn't find her credible. What is helpful about that, and why should she have been allowed to testify to it? Because Rule 701 addresses this. I'm sorry? Rule 701 addresses this. Jurors, excuse me, witnesses are allowed to testify in terms of conclusions and opinions. If it would be helpful. If it would be helpful. Because this was a conclusion that incorporated a set of objective manifestations that allowed him to describe essentially the impact her testimony had because of the impression she made on her. He wasn't describing, he didn't say she was a liar. The question was, in your opinion, was she credible? What is the difference between she's not credible and she's a liar? Well, much like the difference between, well, for example, United States v. Mellie, this Court's decision. A 901 operator was able to testify that a defendant appeared to her to be feigning grief. That's a clear statement about what's going on in the defendant's head. The statement that she was lying is a statement about what's going on in the defendant's head. A statement, I did not find her credible, is a statement about the impressions the witness got from viewing what he viewed objectively, her demeanor, her voice, her manner. So there was when she's lying and I thought she was lying? There's a difference. Well, because it's helpful. All right. What's the relevance of I thought she was lying? That seems less relevant. Well, I thought she was lying is essentially, yeah, it's essentially saying the same, that she's, that he didn't find her credible. But the question is, was that based on things that he could fairly observe? How is that helpful to the jury other than taking over their role in deciding whether she was lying or not? How is it helpful to the jury in deciding the perjury case? Well, there's two answers to that one. There's two factual reasons why it's helpful. One I've described. It directly rebutted her claim that she was forgetful. So her testimony could either have been from a lack of memory, a failure of her memory, or her testimony could have been that she, the impression that she gave was that she was belligerent, hostile, and essentially came into with the intention of lying. And secondly, there's a different factual defense that was proffered in this case that's separate from what happened in Awadallah. And that was that the defendant made a specific and elaborate claim that on the way home from the grand jury session, she, in talking to her husband, recounting her testimony, had her memory refreshed by her husband, who for the first time revealed that he had been checking her voicemail and that he knew that she had actually been using her voicemail during the period in question. And this testimony went to explain why that whole defense doesn't hold up. It's important to understand. Her whole claim was that she spontaneously and independently with the grand jury realized that she made a false statement and came in to change it, supporting her claim that she didn't have the state of mind of making a false statement. The grand jury's testimony was that the atmosphere of the grand jury, the questions asked by the grand jury, all conveyed such a clear impression that the defendant was lying, that she could not have left that room without knowing that they did not believe her testimony. And therefore, that went directly to rebut her claim that she independently changed her testimony when, in fact, the jury was trying to say that he could testify to all the objective facts. We said this to her, we said that to her, and so on. How is it helpful and how particularly is it not more prejudicial than helpful for him to say because we didn't believe her and she knew it? Why do you need that other than to essentially put before the jury, the petty jury, the authority of the grand jury and the grand jury foreman as to his assessment on what they're supposed to be deciding? I don't see why, once you have all of the objective facts, there's any reason to give more. And that is what I understand the standard to be under 701. Well, the standard of 701 is that it's rationally based on observations and helpful. Okay. Now, the 701 is flexible enough, in fact, it's designed to allow witnesses to testify in terms they're comfortable with because it recognizes that certain opinions of, well, witnesses of the court But he was asked this. He gave, he said the stuff which, you know, is still sort of marginal about she was belligerent, she was this and she was that. And then he said, and did you believe her or did you find her credible? He didn't just come up and say it. Well, but the opinion she's credible is similar in form to the testimony propertied in the cases that defense sites and holodomor sites. Like what? That she was nervous, that she was lucid, coherent. Okay. That feigning grief. What's just a feigning grief case? So, these types of opinions are commonly allowed under Rule 701. And furthermore, under the abuse of discretion standard here, and in certain cases, for certain questions, the plain error standard, there's no reason for this court to take that decision out of the hands of the district court. Is there any case in which this has ever been allowed? Or it happened? I know that there was the Abdallah case where it was tried and the district court and the court of appeals said no. Is there any case in which it was ever allowed? No, it's not. There's no reported case that any of us could find. There's the Awad Abdullah case is distinguishable. That was a case, again, about abuse of discretion. And just because a district court has discretion to exclude certain evidence in a particular case does not mean that another district court does not have discretion to allow that evidence in a similar case. The ability to make those decisions by the trial court is the definition of discretion. The trial court here sat through two trials, heard the defendant testify in the first trial, knew about the Crawford defense because it was litigated prior to trial, and made the decision that such testimony would be helpful and would not be outweighed by any prejudicial value. Well, actually, I mean, my understanding is that the representation made by your opposing counsel was basically accurate, i.e., the decision that was made in the motion in limine where there was a reasoned decision was on the premise that what happened wasn't going to happen. And you specifically said that, the district judge. And then when it did happen and there were specific objections made, there was no at least on the record balance or explanation for why this was allowed. No, I don't think that's absolutely correct. There was a motion in limine. The motion in limine brought several arguments, including Rule 403. The district court denied the motion in limine saying that the foreperson, the grand juror, could testify, but specifically reserved questions about the scope and extent of whatever conclusions or opinions that the grand juror would be allowed to testify to the point of trial, because when the question was Crawford, she would rule in the objections based on the specific question. There were only the only objectionable questions in this case were the only, excuse me, the only questions objected to were whether. Well, what the district judge said in the motion in limine was that he could testify as to materiality as to the physical context of statement and defendant's demeanor. The informant personally observed these things and they are relevant to the jury's determination. That's what he said. Well, you're assuming that the district judge didn't feel that lack of credibility was an aspect of her demeanor. Like I said, it's the impression that it made on the grand juror. And the district court specifically, you know, this was litigated. She heard the question. She denied the objection. So she felt that it was proper Rule 701 testimony. And to address another point, there was one point where the grand juror said in response to a question, asked of him what he thought, he said, we, the grand jury, thought. There was no objection to that. So that slipped through. But the district court did correct that witness whenever he slipped up and said we instead of I. So that would be clear. You're telling us that the only, that the witness did testify once about the grand jury and no objection was made. Right. And later did the judge instruct the jury about limiting the grand juror's testimony to himself alone, or was that simply a ruling in limine for the lawyer's benefit? Well, that was simply, no, the district court simply in front of the jury told the witness to limit his responses to what he personally observed. So it didn't instruct the jury to do anything. It was instruction to the witness. There was no limiting instruction, but there was no request for one, nor was there any objection. And, but that was in the presence of the jury. Yes. And the judge said limit your testimony to yourself, not to the rest of the jurors. Correct. Precisely. So, Your Honor, I only have approximately a minute remaining. And I'd like to just wrap up by saying, again, this is a question of whether the district court abused its discretion. Defense relies heavily on the Almodovar case. This is a case of abuse of discretion. It requires a close look at the times when questions were objected to and when they were not. Mostly they were not. The decision of the district court should be upheld here under the abuse of discretion standard as long as there is any inference in the record supporting the district court's decision. There are no cases out there saying that this was improper. The only other case dealing with the question of whether juror bonding or affinity with a grand jury witness is United States v. Conley in which that court upheld the admission of such evidence to materiality, yes, but found that there was no evidence of such bonding and that such, and that, therefore, essentially, the tie goes to the district court's ruling because there's no basis for us to find those cases. If we ruled as you're asking us to, would we be in conflict with the Second Circuit of Almodovar? I'm sorry. I couldn't hear you. If we ruled as you're asking us to, would we be in conflict with the Second Circuit in the Almodovar case? No, Your Honor. You would both be upholding the district court's discretion to the merits of merit. That's true, but that's not really what the Second Circuit said. I mean, the Second Circuit seemed to say, did it not, that the opinion evidence was simply inappropriate. No. The Second Circuit said that these were rational concerns that they would lead to the district court's discretion and said, I have a quote, the practical answer to the question of prejudice is unknowable, unquote. And, therefore, it's up to the district court to decide. If you ruled here that district courts must exclude it, in other words, that the district court's decision to include this testimony was an abuse of discretion, you would essentially be saying that district courts, excuse me, that grand jurors could never testify. That would be essentially treated as a per se rule because it would be based on this district court's decision that grand jury testimony is inherently prejudicial. Okay. Your time is up. Thank you very much for your argument, your helpful argument, and we will give you one minute in rebuttal. Thank you. I would just like to point out in the Almodovar case from the Second Circuit,  if the district court has conscientiously balanced the proffered evidence, probative value with the risk of prejudice, its conclusion won't be disturbed on appeal unless it was arbitrary. But to avoid acting arbitrary, you, the district court, has to make this conscientious assessment, probative value versus prejudice. So that's a process objection. Did you make that argument to the district judge? You could allow it in, but we want a ruling from you balancing the probativeness versus the prejudice, and we want to argue that. Did you make that objection? This was litigated in limine. I wasn't trial counsel. It was argued just vehemently by trial counsel in the motions in limine. Did you specifically? When the judge finally made the ruling, because he deferred the particulars until he heard the proffered testimony. Correct. The time that the judge made its ultimate ruling in trial, did anybody say, Judge, process is being denied here. We want your ruling to give a specific 403 balance. Not specifically. The consistent objection by defense counsel, and they were repeated throughout the entire proceeding, was objection opinion evidence, offering a conclusion. This is impermissible evidence. So no argument about process. Judge, you didn't give us the 403 balance. Correct. However, the district court's only entitled to that deference if they have made that determination. Did at some point the trial counsel say, or early on in this discussion, during the trial, Judge, you said you can only testify as to X, and now he's testifying as to Y? I'm sorry. Did he say to the judge, your motion to eliminate a ruling was he could testify as to X, but now he's testifying as to Y? No. No. I thought he did. No. Okay. No. Unfortunate. That was not brought up. But what the government's proffer was is on the first ER, page 48. That was the specific proffer that the government gave, and the government said they're not going to be offering the witness to provide expert testimony as to Mrs. Wiggin's state of mind. Let's see. The grand jury is not going to tell the jury how to decide the issue. He's just going to provide them the facts on which they can consider. That was the proffer. Okay. Thank you very much. Thank you so much. Thank you, health counsel, for your arguments. The case of United States v. Wiggin is submitted, and we will take a 10-minute
judges: Ebel, Fernandez, Berzon